# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CARESSA TRALONGO,**
            Plaintiff,

    v.                                                                                           Case No. 12-C-0817

**IMPACT ALCOHOL & OTHER**
**DRUG ABUSE SERVICES, INC., et al.,**
            Defendants.

## DECISION AND ORDER

       Caressa Tralongo is a lieutenant colonel in the Wisconsin Air National Guard. From 2006 to 2013, she was also a full-time civilian employee of the Guard, working at the 128th Air Refueling Wing in Milwaukee. For a period of time between 2010 and 2012, Tralongo's immediate supervisor was Michael Stasiewicz, and Stasiewicz's supervisor was Edward Metzgar. Tralongo alleges that Stasiewicz, with assistance from Metzgar, discriminated against her on the basis of gender. The alleged acts of discrimination involved transferring her to a different position (which Tralongo viewed as a demotion), reprimanding her, and putting her on a remedial development plan.

       Tralongo also alleges that Stasiewicz and Metzgar enlisted the help of one of the Guard's contractors, IMPACT Alcohol and Other Drug Abuse Services ("IMPACT"), to discredit her. IMPACT, which was then known as "Symmetry," provides various employee-assistance programs to the Guard. As is relevant to this case, Metzgar asked IMPACT to have two of its social workers interview various Guard members at the 128th Air Refueling Wing in order to determine what could be done about low morale. These social workers prepared a report summarizing their interviews. The report contains a section discussing

comments that Guard members made about Tralongo, and many of those comments were negative. The authors of the report stated that it was their opinion that Tralongo had irretrievably lost all credibility and trust among those under her command, and they recommended that Tralongo be replaced as commander. As far as the present record reveals, no one at the Guard took any employment action against Tralongo on the basis of the report. However, Tralongo alleges that the report created an untenable work environment for her. She alleges that, to escape the untenable environment, she accepted a new position with the Wisconsin National Guard in Madison and transferred out of the 128th Air Refueling Wing.

Currently, Tralongo does not work in a civilian capacity for the Guard. In October 2013, she accepted employment with the Department of Veterans Affairs. However, she remains a lieutenant colonel in the Wisconsin Air National Guard.

Defendants Metzgar and Stasiewicz have moved to dismiss Tralongo's claims against them on a number of grounds. The claims Tralongo alleges against them arise under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. However, for relief, Tralongo does not seek damages or reinstatement to her prior position at the 128th Air Refueling Wing. See Br. in Opp. at 15, ECF No. 42. Rather, she seeks injunctive relief (1) prohibiting use or reference to the IMPACT report, (2) requiring Metzgar and Stasiewicz to "disavow" the IMPACT report and to "remove and destroy all copies of the IMPACT report from the 128th Air Refueling Wing," and (3) requiring Metzgar and Stasiewicz to "create and implement a policy that assures such discriminatory behavior does not occur against future employees of the Wisconsin National Guard." Id. at 14.

A fundamental problem with Tralongo's claims against Metzgar and Stasiewicz is that she does not have standing to pursue the injunctive relief she seeks. To have standing, a person must demonstrate an injury in fact that is fairly traceable to the acts of the defendants and likely to be redressed by favorable judicial relief. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). Tralongo has not demonstrated that she is currently suffering an injury that could be redressed by the injunctive relief she seeks. Tralongo no longer works for the 128th Air Refueling Wing and states that she will not seek further employment there. See Br. in Opp. at 15, ECF No. 42. She has not alleged that the report's mere existence or its use at the 128th Air Refueling Wing is interfering with her new position at the Department of Veterans Affairs or her military appointment in the Wisconsin Air National Guard. Indeed, as far as the present record reveals, the report is not currently being used by anyone affiliated with the Guard and is merely sitting dormant in a file. Thus, an injunction requiring the defendants to disavow, destroy, and cease using the report would not redress any cognizable legal injury. Similarly, because Tralongo no longer works at the 128th Air Refueling Wing, an injunction requiring the defendants to create and implement a policy to prevent future discrimination there would not redress any cognizable legal injury. Perhaps Tralongo was injured by the IMPACT report and the actions of Metzgar and Stasiewicz in the past, and perhaps damages would redress that injury, but as noted Tralongo does not seek damages against Metzgar or Stasiewicz. See Kenseth v. Dean Health Plan, Inc., 722 F.3d 869, 890 (7th Cir. 2013) (recognizing that a plaintiff's having standing to pursue damages does not automatically mean he or she has standing to pursue injunctive relief). Accordingly,

Tralongo does not have standing to pursue her claims against Metzgar and Stasiewicz, and those claims will be dismissed for lack of jurisdiction.[1]

The remaining matter before me is a motion for summary judgment filed by IMPACT. Tralongo brings four claims against IMPACT: a claim under 42 U.S.C. § 1985(3) for conspiracy to interfere with her civil rights, two claims for invasion of privacy under state law, and one claim for defamation under state law. All claims arise out of IMPACT's having prepared the report containing negative statements about Tralongo at Metzgar's request. The gist of the § 1985(3) claim is that Tralongo believes that Metzgar (possibly acting with Stasiewicz) told IMPACT to prepare a negative report about her so that it would be easier for Metzgar and Stasiewicz to terminate her from her position at the 128th Refueling Wing. Tralongo believes that Metzgar and Stasiewicz wanted to terminate her because of her gender, and although she does not allege that IMPACT was also motivated by gender, her claim assumes that IMPACT was at least aware that Metzgar and/or Stasiewicz were motivated by gender—otherwise it could not have been part of a conspiracy to deprive Tralongo of equal protection under the law. See Volunteer Medical Clinic, Inc. v. Operation Rescue, 948 F.2d 218, 224 (6th Cir. 1991) (recognizing that women constitute a protected class under § 1985(3)). Still, Tralongo has not pointed to any evidence indicating that

---

[1] In their reply brief, Metzgar and Stasiewicz indicate that they are no longer affiliated with the 128th Air Refueling Wing in Milwaukee—Metzgar has been transferred to Pittsburgh, Pennsylvania, and Stasiewicz has retired. Reply Br. at 2 n.2, ECF No. 71. If this is true, it would be another reason why Tralongo could not obtain injunctive relief against them: they would have no authority to disavow or destroy the report or prevent the current staff of the Refueling Wing from using it, and they would have no authority to create or implement the nondiscrimination policy she requests.

IMPACT prepared the report with knowledge that Metzgar and Stasiewicz would use it for the purpose of discriminating against her because of her gender.

Tralongo has not explained in detail what IMPACT allegedly included in the report that amounted to an invasion of privacy, or what statements IMPACT made that were defamatory. Having read the report, I assume that the invasion-of-privacy claims are based on statements in the report indicating that Tralongo had had an extra-marital affair. But IMPACT learned this fact (along with all facts included in its report) through interviews with Guard members, and so it is not clear how IMPACT's including this fact in its report could have involved disclosing something that was private—it appears that the fact was already known among members of the Guard. Similarly, because the report was nothing more than a summary of what Guard members told IMPACT's social workers, it is not clear how any statement in the report could amount to defamation. Tralongo does not seem to be claiming that the social workers' summaries of what Guard members told them were knowingly false. Perhaps the Guard members had made false statements, but then Tralongo's defamation claim should be aimed at those members rather than IMPACT.

So Tralongo's claims against IMPACT are extremely weak. However, IMPACT has not moved for summary judgment on the ground that there is insufficient evidence to create a genuine dispute of material fact. Instead, it moves for summary judgment on the ground that the doctrine of intra-military "immunity" bars any claim for damages against it. (I put the word "immunity" in quotes because it is not technically a form of immunity but a limitation on an underlying cause of action. See United States v. Stanley, 483 U.S. 669, 684–85 (1987).) The doctrine bars liability "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Feres v. Untied States, 340

5

U.S. 135, 146 (1950); accord Stanley, 483 U.S. at 684.  The doctrine was originally adopted to bar claims under the Federal Tort Claims Act against the United States.  Id.  However, it has been expanded to bar "suit[s] to recover damages from a superior officer for alleged constitutional violations," Chappell v. Wallace, 462 U.S. 296, 305 (1983), including suits against members of the National Guard acting in their capacity as state actors, see Knutson v. Wisconsin Air Nat. Guard, 995 F.2d 765, 768, 770 (7th Cir. 1993).  The doctrine has also been held to bar claims under 42 U.S.C. § 1985(3).  See Bois v. Marsh, 801 F.2d 462, 469–70 (D.C. Cir. 1986), cited with approval in Duffy v. United States, 966 F.2d 307, 313 (7th Cir. 1992).

In the present case, there is no question that any injury Tralongo has suffered arose out of or was in the course of activity incident to service.  The injury occurred when IMPACT prepared a report at the request of one of Tralongo's superior officers for the purpose of investigating matters involving her service.  Indeed, Tralongo concedes that any action for damages against Stasiewicz or Metzgar, who were her superior officers, would be barred by the doctrine of intra-military "immunity."  See Br. in Opp. to Metzgar and Stasiewicz Mot. to Dismiss at 11–15, ECF No. 42.[2]  However, Tralongo disputes that the doctrine applies to IMPACT, which is a private contractor rather than part of the military.  But the rationale of cases such as Feres, Chappell, and Stanley supports the proposition that a government contractor who is alleged to have injured a servicemember by conspiring with military officials who are protected by the doctrine of intra-military "immunity" should

---

[2]Tralongo argues that the doctrine of intra-military "immunity," even as applied to Metzgar and Stasiewicz, should be reconsidered, but of course I am bound by the decisions of superior courts.

receive similar protection.  The doctrine is based on judicial reluctance to intrude into military matters.  Stanley, 483 U.S. at 682–83.  If a conspiracy claim against military officials would involve intrusion into military matters, then so would the same claim when alleged against the military officials' private-party coconspirator.  To prove the conspiracy claim against the private party, evidence about the military's intentions and purposes would need to be introduced, and this would involve testimony by the military officials themselves and call for a judicial inquiry into intra-military affairs.  Thus, the very harm sought to be avoided by denying the servicemember a cause of action against her superior officers would materialize if the servicemember could simply turn around and sue the alleged private-party coconspirator for the exact same injury.  Cf. Filarsky v. Delia, __ U.S. __, 132 S.Ct. 1657, 1666 (2012) (recognizing that harm sought to be prevented by qualified immunity would be undermined if private party cooperating with government were not also granted immunity).  Accordingly, I conclude that Tralongo cannot maintain a claim under 42 U.S.C. § 1985(3) against IMPACT.

Having determined that Tralongo's federal claims cannot proceed, all that remains are her state-law claims for invasion of privacy and defamation against IMPACT.  Tralongo is a citizen of Wisconsin, and according to her complaint IMPACT has its principal place of business in Wisconsin.  See Am. Compl. ¶ 3.  Therefore, the only basis for federal jurisdiction over the state-law claims against IMPACT is supplemental jurisdiction under 28 U.S.C. § 1367.  Because I have dismissed all federal claims, I will relinquish supplemental jurisdiction over the state-law claims.  See 28 U.S.C. § 1367(c)(3); Fields v. Wharrie, __ F.3d __, 2014 WL 243245 (7th Cir. 2014) (noting that court of appeals expects

district court to relinquish jurisdiction over supplemental claims when the federal claims to which they are supplemental drop out of the case before trial).

Accordingly, **IT IS ORDERED** that Metzgar and Stasiewicz's motion to dismiss is **GRANTED**. The plaintiff's claims against them are dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that IMPACT's motion for summary judgment is **GRANTED** to the extent that summary judgment is entered in favor of IMPACT on plaintiff's § 1985(3) claim.

**IT IS FURTHER ORDERED** that plaintiff's state-law claims against IMPACT are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file deposition excerpts is **GRANTED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter final judgment.

**SO ORDERED** at Milwaukee, Wisconsin, this 13th day of February 2014.

                                          s/ Lynn Adelman
                                          _____
                                          LYNN ADELMAN
                                          District Judge